[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10205
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cv-00079-JRH-RSB

WASEEM DAKER,

Plaintiff-Appellant,

versus

COMMISSIONER HOMER BRYSON,
TIMOTHY WARD,
Assistant Commissioner,
JACK KOON,
Facilities Director,
STEVE UPTON,
Facilities Director,
OTIS STANTON,
Tier Coordinator, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 17, 2020)

Before JILL PRYOR, NEWSOM and BRANCH, Circuit Judges.

PER CURIAM:

Waseem Daker, a Georgia prisoner proceeding *pro se*, appeals multiple orders entered in his 42 U.S.C. § 1983 action against several Georgia correctional officials, the State of Georgia, and the Georgia Department of Corrections. This case was originally filed in the Middle District of Georgia and was transferred to the Southern District of Georgia after some of Daker's claims were dismissed and venue became improper in the Middle District. On appeal, Daker raises four issues relating to the dismissal of his claims, as well as three additional errors. He appeals orders entered before and after the transfer to the Middle District.

Daker makes four arguments challenging the district courts' orders dismissing his various claims *sua sponte*. First, he argues that the district court for the Middle District of Georgia ("Middle District") erred by dismissing several of his claims as malicious because they were duplicative of an earlier suit. Second, he argues that the Middle District erred in dismissing other claims for failure to state a claim. Third, he argues that the district court for the Southern District of Georgia ("Southern District") erred in dismissing his complaint for failure to follow the court's instructions. Fourth, he argues that rather than dismissing his claims the district courts should have allowed him to amend them.

2

Daker asserts three additional errors alongside his dismissal challenges. First, he argues that the Middle District erred in transferring his case to the Southern District. Second, he argues that the Southern District abused its discretion by dismissing his motion to reconsider the Middle District's dismissal order. Third, he argues that the Southern District erred in denying his motion for appointment of counsel.

After careful consideration of these issues, we affirm on all of them.

## I.    BACKGROUND

Daker originally filed this complaint in the Middle District of Georgia, naming multiple defendants (collectively, the "Defendants"): the Georgia Department of Corrections ("GDC"); the State of Georgia, GDC Commissioner Homer Bryson and numerous officials associated with GDC (together, the "GDC Defendants"); and numerous officials at Georgia State Prison ("GSP"), where he was incarcerated. The complaint alleged that: (1) the Defendants denied Daker various religious materials and services in violation of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (2) the Defendants placed Daker in Tier II restrictive housing in violation of his due process rights, as well as his rights under the First and Eighth Amendments and RLUIPA; (3) the Defendants' custom of forcing prisoners to shave, or forcibly shaving prisoners, with unsanitized or broken clippers violated

3

the Eighth Amendment; (4) the Defendants' customs of deliberate indifference to, and failure to intervene in, unnecessary or excessive uses of force violated the Eighth Amendment; (5) the Defendants' use of MK-9, a chemical agent, violated the Eighth Amendment; (6) the Defendants' beard-length restrictions and their retaliation against Daker for wearing a beard violated his due process rights, as well as the First and Eighth Amendments and RLUIPA; and (7) the Defendants' policy and custom of denying Sensodyne toothpaste to inmates on the Tier program and to indigent inmates with sensitive teeth violated the Eighth Amendment.  Daker requested various forms of injunctive, declaratory, and monetary relief.

## A. Other Litigation: *Daker I and Daker III*

To analyze the claims in this case, we must first take note of Daker's other ongoing litigation.  Before the instant case, Daker brought an action in the Middle District against many of the same defendants named in this suit.  *See Daker v. Owens*, No. 5:12-cv-00459-CAR-MSH (M.D. Ga. Nov. 20, 2012) ("*Daker I*").  After an initial screening of that case, the district court ordered, and a magistrate judge reminded, Daker to file an amended complaint that included only three surviving claims.  When Daker expressed concern at a hearing before a magistrate judge that this limitation would result in waiver of his other claims, the magistrate

4

judge told Daker he could appeal any limitation after his suit was complete, thereby avoiding any potential waiver.

At the same hearing, the magistrate judge informed Daker that he would need to file any claims he had against GSP officers in the Southern District, where the prison was located. Despite the district court's instruction to file an amended complaint with only the three surviving claims, Daker filed a superseding amended complaint alleging six claims. The district court dismissed the superseding amended complaint for failure to comply with the court's directions. Importantly, *Daker I* was not dismissed until months after Daker filed the instant suit. This overlap in the lawsuits was key to the Middle District's decision to dismiss the claims in the instant case as duplicative. Daker's appeal of *Daker I* is currently pending before this Court. *Daker v. Jones*, No. 17-10695 (11th Cir. Feb. 13, 2017).

Along with *Daker I* and the instant case, Daker filed a third suit against the GDC and several GDC and GSP officers. *Daker v. Bryson*, 5:17-cv-00025-TES-MSH (M.D. Ga. Jan. 19, 2017) ("*Daker III*"). The complaint in *Daker III* alleged, among other things, that several GSP officers had again sprayed Daker with MK-9 and forcibly shaved him, in violation of the Eighth Amendment. The district court dismissed *Daker III* as duplicative of *Daker I* and *Daker II* and therefore

5

malicious. Daker's appeal of *Daker III* is also pending before this Court. *Daker v. Ward*, No 17-13384 (11th Cir. Jul. 27, 2017).

### B. Middle District Proceedings

Returning to the instant suit ("*Daker II*"), the Middle District dismissed all but one of Daker's claims as malicious because they were duplicative of the claims in *Daker I*, which was still pending in the district court when Daker filed the complaint in this case. The only claim that was not duplicative was the one based on Daker's allegation that the use of MK-9 against prisoners at GSP violated the Eighth Amendment. But as to this new claim, Daker failed to allege sufficient facts to demonstrate that anyone other than the officers at GSP were liable for the use of MK-9 on him or other prisoners. As a result, the district court dismissed for failure to state a claim the MK-9 claim against the GDC Defendants, the State of Georgia, and the Georgia Department of Corrections. The district court also noted that Daker's MK-9 claim against the State of Georgia and GDC would fail for another reason—because § 1983 does not abrogate state sovereign immunity. Because Georgia had not otherwise waived sovereign immunity for this suit, both the state and the GDC were immune under the Eleventh Amendment.

After the MK-9 claim against these defendants was dismissed, all that remained of Daker's suit was his MK-9 claim against officers at GSP. Because none of the GSP Defendants was a resident of the Middle District, and none of the

alleged events took place there, the district court found that venue was no longer appropriate there. The court therefore transferred the case to the Southern District, where GSP is located and the remaining defendants resided.

### C. Southern District Proceedings

Once his case was transferred, Daker filed a motion to vacate and reconsider the Middle District's order under Fed. R. Civ. P. 59(e), arguing that the district court erred both in finding his claims duplicative and in dismissing the MK-9 claim against the State, the Department of Corrections, and the GDC Defendants. A magistrate judge in the Southern District dismissed this motion as improperly filed, ruling that the motion should have been filed in the Middle District. In the same order, the magistrate judge instructed Daker to file an amended complaint within 14 days using an 11-page prisoner civil rights complaint form to which he could attach no more than 10 written pages. The order also provided Daker with an 11-item checklist for his amended complaint, including formatting requirements and advice on how to state a valid claim upon which relief could be granted. The magistrate judge made clear that failure to comply with these requirements could result in dismissal of the action.

Shortly thereafter, Daker filed a motion for an extension of time to complete the amended complaint. The magistrate judge granted this motion but noted that failure to comply with the extended deadline would result in dismissal. Before the

7

expiration of the extended deadline, Daker filed a second motion for extension of time, representing that he needed another extension because he had undergone wrist surgery and could not write for long periods of time. The magistrate judge did not directly rule on this motion. Instead, when Daker failed to meet the amended deadline, the magistrate judge issued a Report and Recommendation ("R&R") advising that the complaint should be dismissed without prejudice for failure to follow the court's orders. In the R&R, the magistrate judge noted that Daker had filed seven pleadings totaling 15 written pages of substantive content since ordered to amend his complaint. Because Daker was able to file pleadings longer than the 10 written pages he was allowed to attach to his amended complaint, the magistrate judge determined that Daker's reason for requesting a second extension was suspect and that no more extensions would be allowed.

Daker objected to the R&R. He argued, among other things, that although the surgery was to his non-dominant wrist, he had to use that hand to hold the paper on which he was writing, which caused him a great deal of pain. He also maintained that he needed more pages to plead his case and that the court-imposed limit violated Federal Rule of Civil Procedure 18(a), which allowed him to bring as many claims as he had against the same defendants. On the same day, Daker filed a motion for appointment of counsel to assist him in amending his complaint.

8

The district court overruled Daker's objections and adopted the magistrate judge's recommendation. The district court rejected Daker's excuses for why he was unable to complete the amended complaint because he had filed 10 pleadings totaling 150 pages since the magistrate judge's report was filed. If he was able to draft those pleadings, the district court reasoned, he could easily have completed the 21-page amended complaint. The district court also rejected Daker's assertion that he was unable to adequately plead his case within the page limit set by the magistrate judge. Finally, the district court found that there were no exceptional circumstances that warranted appointment of counsel.

This is Daker's appeal.

## II.    DISCUSSION

On appeal, Daker argues four separate errors surrounding the district courts' decisions to dismiss his claims *sua sponte* and without leave to amend. He also asserts three additional errors: that the Middle District erred in transferring his case to the Southern District, that the Southern District erred in denying his motion to reconsider the Middle District's dismissal order, and that the Southern District erred in denying his motion for appointment of counsel. We begin by considering the four alleged dismissal errors and then address the three remaining issues.

9

**A. Neither the Middle nor the Southern District Erred in Dismissing Daker's Claims.**

Under the Prison Litigation Reform Act ("PLRA"), the district court must review a prisoner's complaint against a governmental employee or entity prior to docketing and must dismiss the complaint if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Daker contends that the district courts erred four times when completing these reviews. He argues the Middle District erred when it dismissed all but one of his claims as malicious and dismissed the MK-9 claim against the GDC, the State of Georgia, and the GDC Defendants, for failure to state a claim. He also maintains that the Southern District erred when it dismissed his MK-9 claim against the GSP officers for failure to follow court orders. Finally, he argues that both district courts erred by dismissing these claims without granting him leave to amend his complaint. We disagree.

**i.    The Middle District Did Not Err in Dismissing Daker's Duplicative Claims as Malicious.**

Daker first argues that the Middle District erred in dismissing the bulk of his claims as malicious because they were duplicative of *Daker I.* We review the dismissal of claims as malicious under § 1915(e)(2)(B) for an abuse of discretion.

10

*See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding the standard of review for dismissal under § 1915(d) is abuse of discretion); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (adopting the abuse-of-discretion standard for review of dismissals under 1915(d) as the standard of review for dismissals under 1915(e)).

This Court has yet to define "malicious" for the purposes of § 1915(e)(2)(B); however, our sister circuits have dismissed duplicative cases as malicious under the statute.  *See Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal . . . as malicious."); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (affirming the dismissal of a *pro se* suit as malicious where the new suit was "directly related, if not identical to" a previously dismissed complaint).  "To determine the ordinary meaning of an undefined statutory term, we often look to dictionary definitions for guidance."  *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020) (internal quotation marks omitted).  Although in ordinary usage malicious is often defined as "having or showing a desire to cause harm," *Malicious*, Merriam-Webster Unabridged Online Dictionary, https://www.merriam-webster.com/dictionary/malicious (last visited Dec. 4, 2020), the legal definition of malicious typically does not require intent to cause harm.  For example, *Black's Law Dictionary* defines malicious as "[w]ithout just cause or

11

excuse." *Malicious*, *Black's Law Dictionary* (11th ed. 2019). *Black's* defines malicious abuse of process as "the improper . . . use of a legitimately issued court process to obtain a result that is either unlawful or beyond the process's scope." *See Malicious Abuse of Process*, *Black's Law Dictionary* (11th ed. 2019); *see also Abuse of Process*, *Black's Law Dictionary* (11th ed. 2019).

With these definitions in mind, we hold that the district court did not abuse its discretion in dismissing Daker's claims as malicious. The district court found that the bulk of the claims in this case were duplicative of *Daker I*. It also noted that this suit was filed after the defendants in *Daker I* filed a motion to dismiss Daker's complaint for failure to comply with court orders. The district court then appropriately concluded that this second filing was done to "circumvent the Court's order regarding his amendments or to avoid the potential consequences of violating the Court's order" and to "force the Court to unnecessarily expend judicial resources, and frustrate the orderly disposition of Plaintiff's claims." Doc. 17 at 9.[1] As such, it was reasonable for the district court to conclude that Daker's filing of the new action meets the legal definition of malicious. It is certainly an "improper" use of process to file a new suit in an effort to avoid court orders in a previous suit, and there is "no just cause or excuse" for Daker's doing so.

---

[1] "Doc." numbers refer to the district court's docket entries.

Because the district court reasonably concluded that the dismissed claims were duplicative of *Daker I* and filed to circumvent court orders in that case, the court did not abuse its discretion in dismissing the claims as malicious under § 1915(e)(2)(B).

### ii. The District Court Did Not Err in Dismissing Daker's MK-9 Claim Against GDC Defendants, the GDC, and the State of Georgia for Failure to State a Claim.

Daker next argues that the Middle District erred in dismissing without prejudice his MK-9 claim against the GDC Defendants, the GDC, and the State of Georgia for failure to state a claim upon which relief could be granted. He contends that the district court should have construed the claim more broadly and used facts from *Daker III* to infer a policy or custom of use of MK-9 that implicated the GDC Defendants.

We review *de novo* a district court's *sua sponte* dismissal of a prisoner's complaint under the PLRA for failure to state a claim. *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). Dismissals for failure to state a claim under the PLRA are governed by the same standard as dismissals under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal, a complaint must include factual content that, when accepted as true, allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman*, 871 F.3d at 1289.

13

Although *pro se* pleadings are held to a less stringent standard than those drafted by an attorney, a *pro se* pleading must still contain factual support for a claim. *Id.*

In his superseding amended complaint, Daker alleged that several GSP employees sprayed him with MK-9 in November of 2019. He did not allege any facts showing this incident arose as a result of GDC policy or that any of the GDC Defendants were involved in the decision to use MK-9. Similarly, Daker's complaint in *Daker III* did not allege that any GDC Defendants were involved in the use of MK-9 at GSP. Even though Daker is a *pro se* litigant, the district court was not required to construe his complaint so broadly as to say it stated a claim when no facts to support the claim were alleged. *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). The district court's dismissal of the MK-9 claim against the GDC Defendants, the GDC, and the State of Georgia for failure to state a claim was proper.[2]

---

[2] The district court also held that, even if Daker had stated a claim on which relief could be granted, the claims against the GDC and the State of Georgia would be subject to dismissal because of Eleventh Amendment immunity. Daker has appealed this ruling as well. Because we hold that the claims were properly dismissed for failure to state a claim, we do not address the Eleventh Amendment immunity issue.

### iii.    The District Court Did Not Err in Dismissing the Remainder of Daker's Claims for Failure to Follow Court Orders.

Daker contends that the Southern District erred in dismissing the remainder of his claims for failure to follow court orders.[3]  To support this argument, Daker challenges the court's orders themselves, maintaining that the court-imposed page limit for his complaint was an abuse of discretion.  Daker is incorrect on both counts.  We first explain why the page limit was valid and then turn to why the dismissal for failure to follow the limitation was appropriate.

Daker is a serial litigant.  *Daker v. Jackson*, 942 F.3d 1252, 1255–56 & n.4 (11th Cir. 2019).  This Court has held that district courts may employ various ways to manage the burden that serial prisoner litigants impose, including, among other things, injunctions limiting the number of pages that a complaint may contain.  *Procup v. Strickland*, 792 F.2d 1069, 1072–73 (11th Cir. 1986) (en banc).  Courts are given "considerable discretion" in deciding how to impose restrictions on serial litigants.  *Id.* at 1074.  The only limitation on this power is that these litigants cannot be "completely foreclosed from *any* access to the court."  *Id.*

---

[3] Daker maintains that the district court dismissed his complaint for reasons not stated in the R&R.  He is incorrect.  While the district court did point to additional flaws in Daker's complaint, such as the fact that the complaint included the previously-dismissed GDC Defendants, this was not the basis of the district court's ruling.  The district court dismissed the complaint solely on the grounds included in the R&R, which recommended that the complaint be dismissed for failure to comply with court orders.  We therefore will review only the validity of that ground for dismissal.

Here, the magistrate judge's page limit did not foreclose Daker's access to the court. The choice to limit Daker to an 11-page form and 10 pages of additional content is well within the "considerable discretion" courts have to limit the number of pages a serial litigant's complaint may contain. The magistrate judge's instructions were proper.

We now turn to whether the district court's dismissal was error. We review the district court's dismissal of a case for failure to comply with a court order for an abuse of discretion. *Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1122 (11th Cir. 2017). District courts have the inherent authority to control their dockets and ensure prompt resolution of lawsuits. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). We have held that a district court may dismiss a lawsuit *sua sponte* for failure to comply with a court order based on this authority. *Foudy*, 845 F.3d at 1126. Dismissal is an extraordinary remedy, but dismissal based on a plaintiff's failure to comply with a court order generally is not an abuse of discretion, especially where the litigant has been forewarned. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Here, Daker was explicitly forewarned that failure to comply with the magistrate judge's orders would result in dismissal. The magistrate judge's instructional order provided Daker with a numbered list of the requirements for his amended complaint. It stated that "[p]laintiff's failure to file an appropriate

16

Amended Complaint also could result in the dismissal of his cause of action for failure to follow this Court's Order." Doc. 21 at 7. We have upheld dismissals for failure to follow court orders with far less explicit warnings. *See e.g., Foudy*, 845 F.3d at 1125–26 (dismissing a complaint for failure to follow courts orders where the previous instructions did not state that the complaint would be dismissed if the court's orders were not followed). Given the clear warning, the district court did not abuse its discretion in dismissing Daker's complaint after he failed to comply with the court's instructions.

### iv. The District Courts Did Not Err in Dismissing Daker's Claims Before Giving Him Leave to Amend.

Throughout his brief, Daker repeatedly argues that both district courts should have allowed him to amend his claims prior to *sua sponte* dismissal. Generally, a district court must give the plaintiff notice of its intent and an opportunity to respond prior to *sua sponte* dismissing a claim with prejudice. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). However, the general rule against dismissal with prejudice without notice does not apply if the claim is patently frivolous or if amendment would be futile. *Id.*

Here, two of the three dismissals Daker contests—the dismissals for failure to state a claim and for failure to follow court orders—were without prejudice. Because Daker could have refiled these claims, the district courts were under no obligation to give him leave to amend prior to dismissal. *Id.* This leaves only the

17

claims that were dismissed as malicious as potentially violative of *Tazoe*.

However, any leave to amend these claims would have been futile. No change to

the complaint, short of bringing new claims entirely, would have made the claims

non-duplicative. The purpose of amendment is to cure a complaint where the

underlying facts and circumstances are meritorious, not to bring entirely new

claims. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because Daker's claims were

either dismissed without prejudice or unredeemable by amendment, both district

courts were within their discretion when they dismissed Daker's claims *sua sponte*

without first giving him leave to amend.

## B. The District Court Did Not Err in Transferring the Case to the Southern District.

Along with objecting to the various dismissal orders, Daker maintains that

the Middle District erred when it transferred his case to the Southern District. We

review a district court's decision to transfer a case for an abuse of discretion.

*Roofing & Sheet Metal Servs., Inc. v. La Quinta Motors Inns, Inc.*, 689 F.2d 982,

985 (11th Cir. 1982). As a general matter, cases arising under federal law may be

brought only in a district where: (1) the defendant resides, (2) a substantial part of

the events giving rise to the claim took place, or (3) the defendant is subject to the

court's personal jurisdiction for the action. 28 U.S.C. § 1391(b). A district court

may transfer a civil action to an appropriate venue if it determines that the action

was filed in the wrong district. *Id.* § 1406(a). A district court may raise an issue of

defective venue *sua sponte*.  *Lipofsky v. New York State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988).

Here, Daker's argument that the transfer was inappropriate relies on his contention that the Middle District erred in dismissing his case against the GDC Defendants for failure to state a claim.  He maintains that because the dismissal of claims against the GDC Defendants was improper, the transfer of venue was also improper.  As discussed above, we agree with the district court that Daker's complaint failed to allege that the GDC Defendants were involved in the decision to use MK-9 on him and other prisoners.  Aside from the residency of GDC Defendants, Daker does not give any reason why venue would be proper in the Middle District.  The MK-9 incident took place in the Southern District, and the GSP officials who allegedly used MK-9 on Daker reside there.  Therefore, the district court's choice to transfer the case to the Southern District was no abuse of discretion.

## C. The District Court Did Not Err in Denying Daker's Motion for Reconsideration of the Middle District's Order.

Daker next contends that the magistrate judge erred when he denied Daker's motion for reconsideration of the Middle District's order.  Here, again, we disagree. When a case is transferred, the transferor court loses jurisdiction of the case. *Roofing & Sheet Metal Servs.,* 689 F.2d at 988 n.10.  A district court cannot perform an appellate function by directly reviewing the decision of another district

19

court. *Id.* at 989.  The Southern District had no power to reconsider or vacate the Middle District's order.  As the magistrate judge explained in dismissing the motion for reconsideration, Daker's motion should have been filed in the Middle District, not the Southern.  The magistrate judge correctly held that he lacked jurisdiction to reconsider or vacate the Middle District's order.

### D. The District Court Did Not Err in Denying Daker's Motion for Appointment of Counsel.

Finally, Daker argues that the district court erred in denying him appointment of counsel.[4]  He asks us to vacate the district court's order and appoint counsel because the case is sufficiently complex, the restrictions placed on him by the magistrate judge are burdensome, and he has insufficient access to the law library.

We review the denial of a civil plaintiff's motion for appointment of counsel for an abuse of discretion.  *See Smith v. Florida Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).  A district court's appointment of counsel in civil cases is warranted only in exceptional circumstances.  *Id.*  The district court should consider the following factors when determining whether exceptional circumstances exist:  (1) the type and complexity of the case; (2) whether the

---

[4] Daker also contends that the district court dismissed his action before ruling on the merits of his appointment of counsel claim.  This is a mischaracterization of the district court's order.  The district court evaluated the merits of the claim and found that there were no exceptional circumstances warranting the appointment of counsel.  We therefore only address Daker's argument on the merits.

litigant is capable of adequately presenting his case; (3) whether the litigant is in a position to adequately investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *See Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (*incorporated by Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990)). The key determination is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court. *Smith*, 713 F.3d at 1065.

Here, the district court did not abuse its discretion in finding that there were no exceptional circumstances that warranted appointment of counsel. The case is not especially complex, and Daker has shown himself to be capable of adequately presenting it. This is evidenced in part by the fact that Daker's case was not dismissed because he failed to understand the legal complexities of the issues before the court. Rather, it was dismissed because he failed to follow instructions. Of course, any *pro se* litigant would likely benefit from the appointment of counsel. But we cannot say that Daker's case is so exceptionally complex as to find the district court erred in denying him counsel here.

21

## III.    CONCLUSION

For the foregoing reasons, we affirm the dismissal of Daker's claims, as well as the district court orders transferring the case to the Southern District, denying his motion for reconsideration, and denying him appointment of counsel.

**AFFIRMED.**